Jerome Buding, Attorney for Mr. Benson May it please the Court, my name is Jerome Buding. I'm the attorney for Mr. Benson who is the appellate in the case. The case presents two constitutional issues. One is the defendant's due process right to be sentenced on true and accurate information. And the other is the defendant's Sixth Amendment right to the effective assistance of counsel. In this case where the attorney knew or should have known that inaccurate information was being presented that could have, in fact in this case, the judge seized on it at sentencing. I thought Dr. Django said the information he provided was accurate but simply might have been misunderstood. He was reluctant to admit that he provided false information, but in reality if you look at what he says, his first report said nothing like he tries to claim in the subsequent report, which is that he was simply trying to provide to the Court what not the therapeutic level of Ambien is, but what it would have been if it had been taken the night before. Let me put it this way. Is there any doubt that Dr. Benson misused Ambien? The question is to the degree. The levels found in his blood, paragraph 28 of Django's original report, the levels found in his blood should have put him to sleep, right? No, the levels in his blood, if you look at his medication history, the PDR manufacturer's own data says that somebody who has a medication history of the sort that Mr. Benson had, you build up a tolerance. He said he took four to five pills that day, right? Well, that was unclear in the record, actually. Well, tell me what the record says about that. I believe he told the police that he took two tablets earlier in the morning. Before his MRI, right? Before his MRI, right. And? And then subsequently told the police that he may have taken some after the accident as well, when he was having a panic attack and had both Xanax and Ambien in his pocket, and he wasn't sure what he was taking. But that he was, I think, clearly using it in the first place off-label for anxiety and, you know, to help him relax and get through an MRI in the morning. But the question is really to what degree he would have been under the influence when his... You know, I can't understand what possible difference that could make in this case. Well, Your Honor, I think it makes a very big difference because in terms of the seriousness of the offense and where... Well, wait a second. What do you... What is your theory of what happened? The accident? That... What caused it? Well, the... It's law of the case. He admitted he pled guilty to it or no contest, whichever. Look, just answer my question. What do you think happened? He was distracted and... He was what? He was distracted and... Distracted by what? Apparently, he was on the phone, hands-free. I see. And you think that if you plow into a stopped car at 50 miles an hour because you're fussing with your phone and you kill people, no problem, as long as you weren't taking... as long as you didn't have some huge Ambien effect. Your Honor, I'm not... What sense does that make? I'm not saying that there's no problem. I'm not saying that he's not reliable. What sense does it make? What difference does it make whether he takes the Ambien? If the accident would have happened the same way as you say it would have because of the telephone and that somehow exonerates him? No, we're not arguing he's exonerated. We're arguing that the degree of sentence he got is based on that. But it seems to me his crime is not worse because he has a lot of Ambien in him. It's bad enough if it's on the phone. It would be worse if he wasn't on the phone, but he decided, I'm not going to... It's this little Honda. I'm not going to worry about that. But, Your Honor, if somebody has a high BAC of 2.5 versus somebody who's at 0.08... What difference does it make? You just said if he didn't have any drugs in his system, the accident would have happened just as it happened because of the telephone. Well, the court found... So why is it... what difference does it make? It looks like the drugs are a superfluous factor in this. Well, they clearly weren't in the judge's sentencing. Didn't he admit that he was intoxicated? He pled no contest to impairment, right? Correct. And the only apparent culprit was the Ambien, correct? Correct. And we know that you're not supposed to be taking Ambien and driving, right? Well, it depends on whether it's affecting you. Oh, come on. If you're impaired, certainly you're not. There can't be any doubt that he was misusing the Ambien, can there? Misusing in the way the sentencing court thought... Driving while under the influence of a therapeutic dose of Ambien. The therapeutic levels are supposed to put you to sleep, right? They would for some people, but not for everyone. They vary and that's what the... You're making a due process argument here based on, in essence, the defendant's own confusion and contradictions, right? The defendant is the source of the information about how many drugs he took, right? Right. The defendant is the source of Dr. Django's analysis. Right, his attorney. And the judge says, in essence, I can't, no expert has told me any way to quantify the degree of Mr. Benson's impairment at the time of the collision. So the judge is backing off of all these nuances and saying, but he didn't even hit the brakes. Except in the very next page he says, this is very clearly a serious, high level of intoxication. And that's one of the problems. Based on no brakes. No, I think he's talking about... He talks about the brakes as being one factor, but he spends a total of 16 lines in the transcript on that. What do you mean the brakes one factor? I don't get it. But the aggravating factor here is that he didn't brake, not at all, not a little bit. I'm looking at page 115 of the sentencing transcript. Right, but then the very next page, I believe it is, it's at 166, or 160, he says, this is certainly a serious level of being under the influence, of being incapacitated. But if he wasn't under the influence and didn't brake, he's a monster, right? That would be worse. Clearly, but if he's at a very high degree... Right, that would be worse, right? Right. Yeah. But if he's at a very high degree of incapacitation, as what appeared from the original sentencing report... No, no, I don't... He just kills some people. And you think that somehow makes him less culpable. If it's based on mere negligence, yes, Your Honor, versus recklessness... What's the mere negligence? You see the car in front of you, and you just don't bother to brake. Well, obviously, he didn't see the car in front of him. Those kinds of accidents happen. What do you mean he didn't see the car in front of him? How do you not see a car in front of you? Was it bad weather or something like that? He's going 50 miles an hour, aiming at a car, which is stationary. Now, how do you... Your Honor, with all due respect, accidents happen because of negligence all the time. Would you explain how this accident happens by negligence only? If someone is taking their attention away from the road, inattentive driving, in some respect, and then... What you're trying to do is back away from the conviction, right? No, I'm not. Look, in your brief, you say his degree of impairment, if any, at all, right? Right. What are you talking about there? What I'm talking about is under Wisconsin, any impairment, however slight, is enough for intoxication. That's why he pled no contest to the offenses. He was found guilty of the offenses. We're not trying to say that he shouldn't have been. What we're saying is that his degree of intoxication was misleadingly presented at the sentencing, and the judge relied on that in giving him one of the most harshest sentences in the history of the state of Wisconsin for these kinds of offenses. That was the only incorrect information that was presented. Can you point us to any cases in the Tucker, Towns, and Due Process line that have granted relief based on incorrect information presented by the defendant himself? I'm not aware of any, but I don't think it matters whether the defendant presents it himself. Why not? Because ultimately it's... We're talking about due process. Right. Because we're talking about... A fair opportunity to be heard. Right. But there's two factors to consider there. One is whether the attorney was deficient in doing so. He knew that there was a mistake in it and didn't correct it and just made a middle note and filed it anyway. But in reality, whether or not it's false information presented by the defense or the prosecution, wouldn't affect the difference of the due process right to be sentenced only on true and accurate information. What exactly... I'm still having trouble here since Django's saying it wasn't inaccurate. It simply might have been misunderstood. Because in paragraph 26, where he lists the therapeutic levels of the various medications, he incorrectly lists Ambien as between 3 and 18 micrograms per liter, and here Mr. Benson's reading is 253. But that's accurate if you're talking about having taken it as directed, right? That's not how he said it. No, that's why it's subject to misinterpretation. Correct. But accurate. I don't know whether it's accurate. Or ambiguous. I don't know whether it's accurate as to 3 o'clock the next afternoon. He doesn't make that clear. It's obviously... You said something about a phone. There was evidence that he was on the phone at the time of the accident. Where did that come from? That was from, I think, the police investigation as well as his own statements. But he didn't make that part of his plea. He accepted responsibility as part of his plea. He wasn't trying to... This phone thing, I don't care what you do with the phone, you don't just... Right. I'm not saying it justified what he did. I'm just saying that there were a number of factors that made the accident occur. Thank you, Your Honor. Okay. Thank you, Mr. Boone. Mr. Boone. Ms. Tarver. May it please the Court, I'm Sandra Tarver, Assistant Attorney General for the State of Wisconsin. I represent the appellee. Your Honor, you asked why this accident occurred. The accident occurred because Dr. Benson was impaired. That was established by Dr. Benson's guilty plea or no contest plea to the charge of homicide by intoxicated use of a motor vehicle. But the problem with the constitutional claims that he's presenting in this case lies in the fact that he can't show that the Wisconsin Court of Appeals or the Post-Conviction Court incorrectly decided the facts. The Wisconsin Post-Conviction Court and the Court of Appeals found the sentencing court was not, in fact, misled by Ambien-related information in the Jingo Report. That finding is fatal to Benson's constitutional claims. The finding is presumptively correct under AEDPA unless Benson rebuts the presumption with clear and convincing evidence. Benson can't rebut the presumption based on the record in this case. To the extent that the sentencing court looked to the Jingo Report for information on the level and effect of Ambien and Benson's system at the time of the crash, the court was doing so certainly not to determine whether Benson was impaired because that fact was established, that fact was adjudicated. The court may have been looking at the information to determine whether the level of impairment was so great as to constitute an aggravating sentencing factor. The court was not misled by the Jingo Report on that question. As to the level of Ambien, the court simply correctly notes what Dr. Jingo says in the report, that the blood test here showed that the medication was present at much higher than therapeutic levels. But the court did not make the mistake of equating the levels of Ambien in the sample with what the levels of Ambien would have been at the time of the crash. Why? Because Benson himself reported that he took Ambien after the crash and before the sample was drawn. A fact which, for some reason, Dr. Jingo does not acknowledge anywhere in his original sentencing report. So the sentencing court correctly understood that the report does not tell you what the Ambien level was at the time of the crash. As to impairment at the time of the crash, the report is inconclusive on its face. Jingo says that Ambien could have produced significant cognitive impairment at the time of the crash, which means it's possible that it did and it's possible that it didn't. Did the court misunderstand? No. The court said that he had no basis to conclude from the report or any other reported sentencing just what the level of impairment was. But I must be not understanding Wisconsin law. I don't understand why if the cognitive impairment was less than originally believed, that would make him less culpable. There's a floor here. If there's no cognitive impairment, you're a first-degree murderer, right? If there is cognitive impairment, you're a lesser criminal. So you think the less cognitive impairment, the longer the sentence rather than the reverse. Well, the conviction was for homicide by intoxicated use of a motor vehicle. It was an element of the offense that Benson was intoxicated at the time of the crash. So that was... But what if he weren't intoxicated? Would he not be punished? No, and I think I agree completely that the aggravating sentencing factor in this case was not the level of impairment but the driving. So I think that the court could... It's conceivable that information could have been put before the court showing that the level of Ambien and its effect on Dr. Benson at the time of the crash was so beyond, so beyond even misuse, even horrible misuse, that the court could say, I find that such a highly aggravated level of impairment from such a highly aggravated level of misuse warrants the imposition of a greater sentence than I might otherwise impose. Oh, I think you have it... I think both of you have it backwards. Suppose a person takes... He wakes up in the middle of the night and he decides to take an aspirin. But it's dark and he reaches for the wrong bottle and he ends up taking some huge Ambien tablet. He's gone and then he drives and the more he feels dizzy, he doesn't understand what's the matter and he has this accident. And you're saying that his punishment will depend on how much Ambien he took? That doesn't make any sense. But this judge sees a lot of drunk driving cases, right? Yes. And at least blood alcohol levels are taken very seriously as potential aggravating factors or mitigating factors in those cases, right? Yes, Your Honor. So, could I ask you... The best evidence I found so far in the record about what pills Dr. Benson took the day of the accident was from the prosecutor's summary in the PCR hearing. And we have that in the appendix. Do we have the underlying information available to us? Police reports or the plea colloquy or... I can't put my finger on the underlying information. I can tell you that at the sentencing hearing, the prosecutor summarized some of the information and at that time said that Dr. Benson had reported taking four or five Ambien tablets on the morning of the accident and there's never been any dispute about the accuracy of that. All right. So that information was before the sentencing court. As well as information that Dr. Benson reported in a letter to the court itself that he had taken Ambien after the crash. Our position has been, even though obviously the case can be looked at from different perspectives, that the court's overall conclusion was that I just don't have any information in the Django report on the basis of which to say there was a highly aggravated level of impairment caused by Ambien or any other drug. And so the court proceeded to sentence on other factors, the aggravating factor being the horrible driving. The horrible, horrible driving. And the judge said exactly what Your Honor said. How do you not see this car that is stopped in the lane directly in front of you? How do you not see that? That is aggravating beyond comprehension. It is not necessary that this court reach the deficient performance prong. Even if it does, it is not necessary to decide whether the standard of review would be de novo or Section 2254D deference  in Strickland. Benson's claim fails on the merits. The standard for judging an attorney's performance is highly deferential, even under de novo review. This report did no harm to Benson's position at sentencing. It may not have been very helpful to the sentencing court, but it did no harm to his case. And in fact, that's largely why the court discounted it in deciding the sentence to impose. Didn't he admit that he was intoxicated? Oh, yes. Well, he admitted that he was materially impaired at the time of the accident. He admitted that when he pled no contest. So why wouldn't that be the end of the case? Well, you may decide that that's the end of the case. I thought that the due process argument was that the sentencing court was inclined to impose a harsher sentence if it found that the level of intoxication was so great that it would warrant imposing a harsher sentence. And the contention has been that's what happened. The appellee contends that's not what happened. The appellee contends that the sentencing court considered that perhaps, but concluded that there wasn't information in the Jingo report on the basis of which to go there. And so the court didn't go there. The appellee asks this court to affirm the district court's judgment and order denying Benson's petition for writ of habeas corpus. If there are no other questions, the appellee will rest on his brief. OK, thank you very much, Ms. Tarver. Mr. Booting, do you have anything further? Just very briefly, Your Honor. The reason it makes a difference in Wisconsin. Is it correct that he admitted he was intoxicated? He admitted he was materially impaired. That's all that's required. See, that's why what I can't get over, at the risk of being very repetitious, is the more intoxicated you are, the less cognitive competence you have. And the less intoxication, the more cognitively competent. So you would think that the less intoxicated you were, the more culpable your conduct was. Because if you weren't that intoxicated, you should have had enough self-control to avoid the accident. But in Wisconsin, the sentencing guidelines on blood alcohol levels get higher. The sentences become worse the more under the influence someone is with blood alcohol. And the same would apply with any kind of medication. The reason being that somebody who's maybe just barely intoxicated hasn't taken the kind of risk of getting behind the wheel of somebody who's way over the limit. But look at this guy. Whether he was a little intoxicated or not intoxicated, he had a terrible accident. Correct, Your Honor. Now, why would it be better somehow, more innocent of him, to have a terrible accident when he was fully compus mentis? Because in Wisconsin, there's a negligent operation of a motor vehicle that causes homicide. And then there is the more serious, more reckless behavior. Yes, well, he surely was. If he was perfectly sober, he was reckless. Well, if he was as high a blood alcohol, I'm sorry. No, no. If he was totally sober, if he had no alcohol in his blood, but this accident would have occurred identically, which is what you think, then he's more culpable, even more culpable. Actually, under Wisconsin law, he would not be. He would be negligent of homicide. Maybe Wisconsin law is deficient. All right. Thank you, Your Honor. And you were appointed, were you not, Mr. Pruden? No. You were not appointed. Well, we thank you for your efforts on behalf of your client. We thank Ms. Tarver as well. So next case.